No. 27,952.

THE STATE RESERVE BANK (Substituted for L. L. PAYNE), *Appellee,*
v. C. E. GROVES, Sheriff of Sedgwick County (Substituted for C.
A. CONNER), and JOS. BOWMAN, Register of Deeds, *Appellants.*

(266 Pac. 42.)

SYLLABUS BY THE COURT.

1. MORTGAGES—*Absolute Deed as Mortgage—Rights of Parties.* When it is established that a deed, absolute in form, was given to secure the payment of a debt, the relative rights of the parties will be determined by the law governing the relation of mortgagor and mortgagee.

2. TAXATION—*Property Subject to Execution for Collection—Ownership.* A valid levy of an execution based on a tax warrant for personal taxes, as provided by R. S. 79-2105, cannot be made on real property in which the person who owed the taxes has no interest.

Appeal from Sedgwick district court, division No. 3; GROVER PIERPONT, judge. Opinion filed April 7, 1928. Affirmed.

*Clyde M. Hudson,* of Wichita, for the appellants.

*P. D. Gardiner,* of Wichita, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is a suit to enjoin the sheriff from executing and the register of deeds from recording a sheriff's deed in a tax-sale proceeding. The court made findings of fact and rendered judgment for plaintiff. Defendants have appealed.

Personal-property taxes aggregating $8,321.35 assessed against J. N. Richardson for the year 1923 were not paid. A tax warrant was issued and returned unsatisfied. It was then filed with the clerk of the district court, who entered it on the judgment docket and issued thereon a tax warrant having the force of an execution. (R. S. 79-2105.) The sheriff levied this on certain real property and sold the same as the property of J. N. Richardson. The plaintiff in this action claims title to the property levied upon and contends that the property was not, therefore, subject to sale under the tax warrant. This presented the real question to be determined. The regularity of the proceeding in other respects is not questioned. The facts with reference to the title of the property, as shown by the evidence and found by the court, are substantially as follows:

Mortgages, 41 C. J. pp. 362 n. 4, 363 n. 26. Taxation, 37 Cyc. p. 1320 n. 79.

The property in question was originally owned, so far as we need here inquire, by Mrs. Maud Heller, the same having been set off and decreed to her in a divorce action with her husband. It consisted of four lots and a residence of the value of perhaps $10,000. J. N. Richardson was the president and one of the active managing officers of the American State Bank. Mrs. Heller borrowed money of Richardson, or of the bank, transacting the business with Richardson. On March 4, 1920, Mrs. Heller executed her note to J. N. Richardson for $8,000, due in six months, with interest at eight per cent from date (the earlier loans need not be mentioned). On the same day she made to J. N. Richardson a general warranty deed for the real property in question, which property she then occupied as her residence. J. N. Richardson indorsed the note and placed it in the bank, and it was carried as an asset of the bank. It does not appear to have been renewed. On May 4, 1921, C. N. Richardson, the wife of J. N. Richardson, made her check for $8,000 to the American State Bank, and the Mrs. Heller note was marked on the note register of the bank as having been paid. Perhaps Mrs. Heller did not know that J. N. Richardson placed the note in the bank, and she did not know that Mrs. Richardson had paid the bank the face of the note, and that the same had been marked "paid" on the bank books.

On May 28, 1923, on the advice of his attorney that the deed from Mrs. Heller to him was slightly inaccurate in its wording, J. N. Richardson procured from Maud Heller a quitclaim deed for the property. The American State Bank failed June 14, 1923, and was taken charge of by the bank commissioner, and L. L. Payne was one of the deputy bank commissioners in charge of the bank. On December 28, 1923, Mrs. Heller executed a special warranty deed to L. L. Payne for the real property in question for a consideration of $1,250, which included the furniture, and surrendered the possession of the property to Mr. Payne, who moved into the property and resided there until the time of the trial of this case.

The evidence disclosed that Mr. Payne really bought the title from Mrs. Heller for the receiver of the American State Bank, and shortly after taking possession of it Payne executed a deed, blank as to grantee, and delivered it to Ray Foley, receiver of the American State Bank. The American State Bank was reorganized as the State Reserve Bank. Payne has paid rent to the bank for the time he has occupied the property. The court found, among other things,

that the warranty deed executed by Mrs. Heller to J. N. Richardson was given to secure her note of $8,000 of that date, and was in effect a mortgage; that the title, subject to this mortgage, remained in Mrs. Heller until she sold to Payne, who purchased for the bank. From this the court concluded that Richardson had no title to the property at any time which was subject to levy and sale on execution. This conclusion must be sustained. It is the established rule in this state that a deed given to secure the payment of a debt is in effect a mortgage. (*Moore v. Wade,* 8 Kan. 380; *Dyer v. Johnson,* 109 Kan. 338, 198 Pac. 944.) A mortgagee has a lien on the property described in the mortgage, but has no title to the real property prior to foreclosure. This has always been the rule in this state. (*Clark v. Reyburn,* 1 Kan. 281; *Seckler v. Delfs,* 25 Kan. 159, 165.) The title to the real property remains in the mortgagor, subject to the mortgage, and he, or his grantee, may show that the prior instrument was in fact a mortgage. (41 C. J. 363.)

When it is once established that a deed, absolute in form, was in fact intended as a mortgage, the relative rights of the parties will be determined by the law governing the relation of mortgagor and mortgagee. (41 C. J. 362.) Applying these well-settled principles of law to the matter, the rights of the parties, so far as this suit is concerned, are readily determined. When on March 4, 1920, Mrs. Heller executed her note for $8,000 to J. N. Richardson, and also executed to him the warranty deed to secure the payment of this note, the deed was in effect a mortgage. We do not regard it as material whether Mrs. Heller dealt with Richardson individually or with him as representing the bank. The fact is, Richardson indorsed the note and placed it in the bank as a part of its assets. The bank thereby became the owner of the note, and since the mortgage is only an incident to the debt, and the transfer of the debt has the effect also of transferring the mortgage, the bank became the owner of the mortgage as well. This situation continued until May 4, 1921, when C. M. Richardson, the wife of J. N. Richardson, gave the bank her check for $8,000, and the note of Mrs. Heller was taken out of the assets of the bank. It is true this check did not include accrued interest on the note to date. Just how that matter was handled was not clearly shown by the record of the bank nor by the evidence, but since the bank owned the note there was no reason why it could not sell the same to Mrs. Richardson for the face of the note if it cared to do so. The bank records do

clearly establish, and the court finds, that the note was taken out of the assets of the bank, and presumably it was turned over to Mrs. Richardson, who had paid the bank for it. This transaction had the effect of transferring to Mrs. Richardson Mrs. Heller's note of $8,000 and the mortgage which she had given originally to J. N. Richardson to secure it. So far as J. N. Richardson is concerned, he had no title to the property at any time, and he was not the holder of the mortgage on it any time after he had indorsed the note and turned it into the assets of the bank. And the bank was not the holder of the note nor the beneficial owner of this mortgage after Mrs. Richardson had paid the bank for the note. During this time Mrs. Heller remained in possession of the property, as she had a right to do as mortgagor, and was the owner of the title, subject to the mortgage. She had a right to sell and convey her interest in this property, and she did sell and convey it by the special warranty deed to L. L. Payne, who purchased for the bank for which he was then acting. The bank then procured the interest of Mrs. Heller, which was the title to the property subject to the $8,000 mortgage then held by Mrs. Richardson.

From this analysis it is clear that J. N. Richardson had no interest in this property subject to levy of execution under the tax warrant at the time that levy was made. C. M. Richardson held a mortgage on it for $8,000 and the plaintiff bank held the legal title subject to such mortgage.

The judgment of the court below is affirmed.