**NATIONAL CASH REGISTER CO. v. STOCKYARDS CASH MARKET et al.**

No. 12781—Opinion Filed Jan. 29, 1924.

Rehearing Denied Sept. 16, 1924.

**1. Sales—Conditional Sales—Equitable Lien of Seller.**

An equitable lien foreclosable in equity does not arise in favor of the seller under a reservation of title in an executory sale of chattels on condition where it is obvious from the plain language of the contract that the buyer should acquire no title or right of ownership therein until such chattels had been fully paid for, and that the buyer should acquire no interest or equity therein by reason of a part payment by him of the purchase price, and where it appears that the seller has reserved the right at his election to retake the property upon a breach by the buyer of the terms and conditions of payment.

**2. Appeal and Error—Review—Absence of Cross-Petition in Error.**

When a defendant in error fails to file a cross-petition in error, only those questions presented in the petition in error are properly reviewable by the Supreme Court on appeal.

(Syllabus by Foster, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Oklahoma County: George W. Clark, Judge.

Action by The National Cash Register Company, a corporation, against the Stockyards Cash Market, a corporation, and Eugene Miller, trustee. Judgment for the defendant trustee, and plaintiff appeals. Affirmed.

Keaton, Wells & Johnston, for plaintiff in error.

Morse, Willingham & Tyson, for defendants in error.

Opinion by FOSTER, C. This action originated in the district court of Oklahoma county, Okla. The National Cash Register Company, a corporation, brought suit against the Stockyards Cash Market, a corporation, engaged in business in Oklahoma City, to foreclose an alleged equitable lien upon three cash registers. Prior to the institution of the action in the court below, the Stockyards Cash Market had executed a trust mortgage, for the benefit of its creditors, of all its property and assets, including the three cash registers in controversy, to Eugene Miller, trustee, who subsequently intervened in the original action and set up ownership to the said cash registers under said trust mortgage as trustee for the creditors of the Stockyards Cash Market. Later the Stockyards Cash Market was adjudged a bankrupt and Eugene Miller, who had been appointed trustee in bankruptcy, intervened in his capacity as trustee in bankruptcy, and adopted the answer which had theretofore been filed by him as trustee for creditors in the original action. The Stockyards Cash Market answered by an unverified general denial.

During the pendency of the action in the trial court on the application of the plaintiff, National Cash Register Company, a receiver was appointed to preserve and

safely keep the three cash registers pending the final determination of the cause.

At the trial the Stockyards Cash Market confessed judgment in favor of the National Cash Register Company for the sum of $1,222.60, and the cause proceeded to trial upon the issues raised by the petition of the plaintiff, National Cash Register Company, and the defendant, Eugene Miller, trustee for the benefit of creditors, who later and before final judgment by stipulation of the parties intervened as trustee in bankruptcy and adopted the answer of the defendant trustee for creditors.

The parties will be hereinafter referred to as they appeared in the court below.

The main cause was tried upon an agreed statement of facts. The only oral testimony introduced at the trial was upon motion of the trustee to assess an attorney's fee of $350. The cause was tried to the court without the intervention of a jury and resulted in a judgment for the plaintiff and against the Stockyards Cash Market for $1,222.60, and in favor of the defendant trustee for costs, and overruling and denying the motion of the trustee to assess an attorney's fee of $350.

From the judgment so rendered in favor of the defendant trustee and against the plaintiff for costs, the plaintiff excepted, and from the judgment of the court overruling and denying the motion of the trustee to assess an attorney's fee, the trustee excepted and the cause comes on regularly to this court on the appeal of the plaintiff.

This appeal involves a controversy between the plaintiff and the trustee of an insolvent corporation over ownership of three cash registers which the plaintiff had delivered to said corporation by virtue of a certain contract of conditional sale, which reads as follows: ·

"The National Cash Register Company,
"Dayton, Ohio.
"Date 12-12, 1919.

"Please manufacture and ship freight prepaid to _____St., Oklahoma City, Oklahoma County, Oklahoma State or to the nearest railroad station, three of your No. 944 (3) E. L. 4 dr. Nos. 1689651, 1689652 & 1712797 registers, white finish, denomination of keys 840 for use on either counter meat business, for which undersigned agrees to pay you two thousand four hundred fifty and no-100 dollars.

"($2450.00) Customer to pay as rental on
"92.00 two styles 854 registers Nos. 16.
——————— 78924 and 1661354 as follows:
"$2542.00
$100.00 cash:

"$_____cash on arrival of register, and the following amount to be evidenced by note: $1412.90 in 13 monthly payments of $100.00 and one of $112.90. Allow $80.00 paid on two 854 registers Nos 1678921 & 16611351 $790.00 paid on previous orders for above 3 No. 944 registers $79.55 of amount paid on No. 1712771 & $79.55 of amt. pd. on No. 1713661. All previous orders for all of said registers canceled.

"Five per cent. discount allowed for cash settlement on arrival of register, but no discount allowed on credit for exchange registers, or on autographic registers. The purchase price, less any payment thereon, shall, at your option, immediately become due and payable, upon refusal of undersigned to accept the register then tendered, or to make any cash payment, or to execute and deliver the note or make any payment provided for therein; or you, or any person authorized by you, if you so elect, may immediately repossess the register, and retain, as rental for use of said register while in the possession of undersigned, all payments theretofore made. Should the register get out of order from ordinary use within one year from shipment, you will, without charge, repair it, provided undersigned pays the transportation charges on it to and from the factory, or nearest agency able to make the repairs, or traveling expenses of repairman. Undersigned to pay for any repairs made without your authorization, and to pay all taxes on the register, and in event of default, to reimburse the company to full extent of taxes paid by it.

"Register shall remain your property until the price or any judgment for same, is paid in full.

"This contract covers all agreements between the parties and shall not be countermanded.

"(Sign here)  Stock Yards Cash Mkt.

"By P. W. Rister, Pres.
"W. J. Widby, Treas.

"(Post Office)
"Oklahoma City, Okla.

"(Seal)

"Stockyards Cash Market."

The admitted facts are that on December 12, 1919, the plaintiff contracted to sell, and delivered to the Stockyards Cash Market, three cash registers under the conditional sale contract set out above, a copy of which was filed for record in Oklahoma county, Okla., February 9, 1920, and an installment note for $1,412.90, payable in 14 monthly installments on which there had been paid an installment of $100.00 on January 12, 1920, and a like amount on February 12, 1920, leaving a balance unpaid of $1,212.90, bearing interest at the rate of

six per cent. per annum from July 26, 1920; that on May 8, 1920, the Stockyards Cash Market. for the consideration therein expressed, executed a certain trust mortgage to Eugene Miller, trustee, a copy of which was introduced in evidence; that at the date of the execution of said trust mortgage the plaintiff had no knowledge thereof and did not consent to or participate therein, and that on said date said Stockyards Cash Market was insolvent; that trustee, Eugene Miller, took possession of all the property of the Stockyards Cash Market, including said three cash registers under said trust mortgage and stored them in the warehouse of the Merchants Southwest Transfer & Storage Company, in Oklahoma City, Okla.

It is not seriously urged that the trustee did not take the three cash registers in controversy subject to the same rights which the plaintiff had against this property in the hands of the Stockyards Cash Market.

The sole question presented for our consideration in this case is whether or not the plaintiff, under the terms of its title reservation contract. had an equitable lien upon the three cash registers in controversy foreclosable in equity.

An examination of the contract in the instant case reveals a clear purpose and intent on the part of the seller not to pass the title to the three cash registers until they had been fully paid for. This purpose is made clear not only from the express language in the contract, but also by the fact as disclosed by the contract that the buyer should acquire no interest or equity in the property by reason of a part payment by it of the purchase price, but that such sum should be retained by the seller as rental for the use of the cash registers. It is obvious from the plain language of the contract that the sale was intended as an executory sale on condition and the vesting of the title made to depend upon the performance of a condition precedent. When measured by the rule laid down in the case of Teague v. Guaranty State Bank of Drumright et al., 82 Okla. 197, 202 Pac. 510, the sale in the instant case must be regarded as a sale upon condition precedent with the clear right reserved to the seller of rescinding the contract on failure by the buyer to perform the condition and retaking the property.

The contract being clear, in the absence of fraud or mistake, neither of which occurs herein, it is the duty of the court to construe the contract as it is and give effect accordingly to the plainly expressed intent of the parties thereto. Cohn v. Clark, 48 Okla. 500, 150 Pac. 467; United States Fidelity & Guaranty Co. v. J. Robert Gillam, 93 Okla. 103, 219 Pac. 660.

If the plaintiff has an equitable lien upon the three cash registers in controversy, it is clear to our minds that such lien must arise outside of the terms of the contract in question.

Liens are property rights and are ordinarily created by statute or by contract, and cannot be created by courts merely from a sense of justice in particular cases. The Lottawanna (Rodd v. Heartt), 21 Wall. 558, 22 L. Ed. 654; Peoples Elec. Ry. Co. v. McKeen Motor Car Co., 214 Fed. 73; section 7407, Compiled Statutes of Oklahoma, 1921.

Our attention has been called to no Oklahoma statute declaring the rights secured to the seller under a title reservation in a conditional sale contract to be in the nature of an equitable lien foreclosable in a court of equity.

We do not say that a contract, merely because it is denominated "a conditional sale contract", or a sale upon condition, might not in a proper case be construed as giving rise to an equitable lien in favor of the seller, but we do say there is nothing in the language of the contract in the instant case from which any of the elements of an equitable lien are made to appear.

Unless the plaintiff under the terms of its contract had a foreclosable lien, it follows that by its demand for a personal judgment it waived its right to rescind for breach of condition precedent and elected to make the sale absolute. Galbreath v. Mayer, 70 Okla. 252, 174 Pac. 517; Osborne & Co. v. Walther, 12 Okla. 20, 69 Pac. 953; Smith v. Barber, 153 Ind. 322, 53 N. E. 1014.

To hold that a foreclosable lien existed in the instant case would in effect destroy the right of the seller under contracts similar to the one here involved to rescind the contract and repossess the property by a proceeding at law.

Our attention has been called to the case of Security National Bank of Oklahoma City v. Truscon Steel Co. et al., 92 Okla. 81, 218 Pac. 665, as a case in which the court laid down a contrary rule to the one here announced. We have already pointed out in this opinion that merely because a contract is denominated " a conditional sale contract" its terms might nevertheless in a proper case give rise to equitable relief.

An examination of the Truscon Steel

Company Case discloses that the contract involved in that case and the circumstances which gave rise to the action of the Truscon Steel Company for the foreclosure of its contract were materially different from the case at bar. The materials which the Truscon Steel Company supplied under its conditional sale contract were to be incorporated in a public bridge constructed by the state of Oklahoma, and its contract specifically provided that the title was reserved until payment of the materials incorporated in the bridge. Furthermore, the contract specifically provided that it should be construed under the laws of the state of Ohio, in which state it has been held that a conditional sale contract creates an equitable lien foreclosable in a court of equity. Under the contract in that case which is materially different from the contract in the instant case and the facts there in evidence which gave rise to the contract and the circumstances generally surrounding the enforcement of the contract, we think the rule announced by our court in that case was correct, but the rule there announced has no application to the facts as disclosed by the record in the instant case.

Our own court has at no time held that a contract of conditional sale similar to the contract involved in the case at bar, as a matter of law creates the right in the seller to an equitable lien. On the other hand, it has held that such contracts are not chattel mortgages, and that these contracts are what their terms so clearly declare them to be, sales upon condition subject to be rescinded upon the election of the seller to retake the property upon a breach of the condition by the buyer. Galbreath v. Mayo, supra.

There remains for consideration the claim of the defendant in error that the trial court committed reversible error in denying his motion to assess as costs an attorney's fee of $350. An examination of the record discloses that the defendant in error has not filed in this court a cross-petition in error complaining of the ruling of the court below upon the question of the assessment of an attorney's fee, nor did he file in the trial court any motion for a new trial. In these circumstances this matter is not properly reviewable by this court on the appeal of the plaintiff alone.

In Higgins-Jones Realty Co. v. Davis, 60 Okla. 20, 158 Pac. 1160, it is said:

"When a defendant in error fails to file a cross-petition in error, only those questions presented for assignments in the pe-

tition in error are properly reviewable by the Supreme Court on appeal."

See, also, the case of Van Arsdale & Osborne v. Olustee School Dist. No. 35, of Greer County, 23 Okla. 894, 101 Pac. 1121, where the court said in the second paragraph of the syllabus:

"Parties who fail to appeal are deemed to acquiesce in the judgment below. The cannot be heard on appeal by others, to complain of error below, and can demand no relief from the appellate tribunal."

For the reasons stated, the judgment of the trial court is hereby affirmed.

By the Court: It is so ordered.